UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULES DUPERON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-3324 c/w**<br>**06-3327** |
| **SGT. TOMMY MARGOITTA AND SGT.**<br>**CHARLES GRIFFIN, INDIVIDUALLY**<br>**AND IN THEIR OFFICIAL CAPACITIES** | **SECTION: "A" (4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss or Alternatively, for a More Definite Statement (Rec. Doc. No. 22)** filed by the defendant, Lieutenant Thomas Mitchell. Also before the Court is a **Motion to Dismiss** (**Rec. Doc. No. 29**) filed by the defendants, Sergeant Charles Griffin, Sergeant Tommy Margiotta, Sergeant Jason Smith, Sergeant Brink Hillman, and Lieutenant Thomas Mitchell, individually and in their official capacities as state correctional officers.

These motions were referred to the United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing, if necessary and submit Proposed Findings and Recommendations for disposition pursuant to **Title 28 U. S.C. § 636(b)(B) and (C)**. Upon review of the record, the Court has determined that these matters can be disposed of without an Evidentiary Hearing.

**I.     Factual Summary**

The plaintiff, Jules Duperon ("Duperon"), was at all relevant times incarcerated in the Sleet Unit of the B.B. "Sixty" Rayburn Correctional Center ("Rayburn") (f/k/a Washington Correctional

Institute) in Angie, Louisiana.[1]  Duperon filed, with retained counsel, the above captioned and consolidated *in forma pauperis* complaints under the Court's federal question and supplemental jurisdiction.  Because the plaintiff alleges constitutional violations occurring while the defendants acted under color of state law, he appears to be proceeding pursuant to Title 42 U.S.C. § 1983 and relevant state law.

In his first complaint, Duperon alleges that on five occasions, May 1, 2, 5, 6, and 7, 2006,[2] Sergeant Tommy Margiotta and Sergeant Charles Griffin threw hot water on him using five gallon buckets.  He further alleges that the hot water caused burns to his arms and/or chest.

He also alleges in the next complaint that, on May 15, 2006, he was called out of his cell to go to the hospital.  He alleges that he was allowed to walk to a water fountain in the lobby where he bent over to take a drink.  He claims that, as he was drinking, Sergeant Griffin approached him from the front and struck him in the right ear.  He complains that Sergeant Griffin then knocked him to the floor, where all of the defendants, Sergeant Griffin, Sergeant Margiotta, Lieutenant Thomas Mitchell, Sergeant Scott, Sergeant Brink Hillman, and Sergeant Jason Smith hit and kicked him.

As a result of these events, Duperon seeks compensatory damages, legal and equitable relief, punitive damages, and attorney's fees and costs.

## II.     Procedural Background

On March 7, 2007, the Court dismissed without prejudice Duperon's claims against Sergeant Scott for failure to serve within the time limits of Fed. R. Civ. P. 4(m).[3]

---

[1]Rec. Doc. No. 1 (06-3324 and 06-3327).

[2]Duperon amended the first complaint in Civ. Action No. 06-3324 to correct the year of the occurrences.  Rec. Doc. No. 5.

[3]Rec. Doc. Nos. 19, 20 (06-3324).

On April 23, 2007, the undersigned issued an Order and Report and Recommendation addressing the first Motion to Dismiss, or Alternatively Motion for More Definite Statement, filed by the defendants Smith, Griffin, Hillman, and Margiotta.[4] The undersigned granted the Motion for a More Definite Statement and ordered the plaintiff to file an amended complaint or reply pursuant Fed. R. Civ. P. 7(a) and *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) and its progeny directed toward the allegations made against all remaining defendants. It was further recommended that the Motion to Dismiss be denied without prejudice to the defendants' ability to file another motion after the amended complaint was filed. The recommendation was later adopted by the District Judge.[5]

On May 21, 2007, Duperon filed a "7a Response" in which he alleges that all of the actions of the defendants violated the Eighth and Fourteenth Amendments to the United States Constitution and La. Civ. Code art. 2315 in the nature of battery.[6]

Duperon further claims that, on each occasion when the hot water was thrown on him, he suffered mild burns all over his body with the pain lasting one hour to one and one-half hours. This was re-inflicted to varying degrees over three consecutive days. He stated that Griffin threw the water on him on the first day and Margiotta threw the water on him on the second day. He could not recall who threw the water on him on the third day. He also stated that he requested medical treatment on each day to no avail. Duperon also alleges that, at the time of these occurrences, he was locked in his cell and not violating any regulations. He claims that there was no need for the use of any force and that there was no effort made to temper the severity of the officers' response.

---

[4]Rec. Doc. Nos. 12, 23 (06-3324).

[5]Rec. Doc. No. 28 (06-3324).

[6]Rec. Doc. No. 26.

3

With regard to the alleged attack at the water fountain, he claims that each of the defendants engaged in the kicking and punching to his body and chest. He specifically stated that Margiotta made sure that he went down to the floor after Griffin struck the initial hit. He also indicated that he was not able to differentiate between the blows delivered by the various officers once he was down on the floor. Duperon stated that he sustained a small scratch to his ear from Griffin and bruises on his back and sides from the overall attack. He also claims that he was denied medical care for these injuries. He alleges that the pain to his ear lasted about one day and the other injuries lasted four to five days.

Duperon further claims that, at the time, he was removed from his isolation cell wearing handcuffs and shackles. He states that he was not violating a regulation and there was no need for any force to be applied. He also claims that the officers made no effort to temper the severity of the attack as they beat him while he was on the floor. Duperon did not mention any act or failure to act by Lieutenant Mitchell in the "7a Response."

### III.     The Pending Motions

Lieutenant Mitchell eventually filed the Motion to Dismiss, or Alternatively, For a More Definite Statement (Rec. Doc. No. 22) which is now before the Court. Mitchell seeks dismissal of the claims against him pursuant to the doctrine of qualified immunity, or alternatively, requests a more definite statement regarding the claims against him in Civil Action No. 06-3327. Duperon did not file an opposition to this motion.

After Duperon filed the "7a Response," the defendants, Griffin, Margiotta, Smith, Hillman and Mitchell, individually and in their official capacities as state correctional officers, filed another Motion to Dismiss (Rec. Doc. No. 29), in which they seek dismissal of Duperon's Title 42 U.S.C.

§ 1983 claims in both of the consolidated cases under the doctrine of qualified immunity and for failure to state a claim for which relief can be granted. The defendants argue that Duperon cannot pursue a § 1983 claim against them in their official capacity. They further argue that he has failed to state a claim of excessive force because his injuries alleged in both complaints were only *de minimis*. Finally, they seek dismissal of Duperon's state law claims for failure to exhaust administrative remedies.

Duperon filed an opposition to the motion conceding the need to dismiss the claims against the defendants in their official capacities. Duperon argues that while his injuries may have been minor, they were not *de minimis* when considered as a whole over such a short period of time. He also argues that even a *de minimis* injury may be enough to state a claim if the force used was repugnant to the conscience of mankind, citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). He suggests that the behavior of the defendants was repugnant because Duperon was cornered in his cell or wearing handcuffs. Again, Duperon failed to mention any allegations or arguments regarding Lieutenant Mitchell.

**IV.     Standards of Review for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, __ F.3d ___, 2007 WL 2200004 at *10 (5th Cir. Aug. 2, 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level

5

on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.*, 127 S. Ct. at 1965 (parenthetical in original) (quotations, citations, and footnote omitted). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*, 127 S. Ct. at 1965 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

**V.     Suit Against the Defendants in Their Official Capacities**

The defendants urge that, in their official capacities, they are not persons subject to suit under § 1983. To succeed on a claim of a civil rights violation under § 1983, a plaintiff must prove both that the constitutional violation occurred and that it did so because of an action taken by a

"person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, it is a fundamental premise of the Supreme Court that a state actor sued in his official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Thus, the defendants, in their official capacities, are not persons suable for a civil rights violation under § 1983. Duperon concedes this point in his opposition memorandum.

The Court notes sua sponte, that it also lacks jurisdiction over the state law claims urged against the defendants in their official capacities pursuant to the Eleventh Amendment immunity doctrine. When an official is named in an official capacity, the action is considered to be one taken against the agency he represents. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978). In this case, the agency would be the Louisiana Department of Public Safety and Corrections ("DOC"). The DOC is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).

Therefore, suit against the DOC is suit against the State of Louisiana, implicating the Eleventh Amendment immunity doctrine. *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)). The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster*

*House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, neither the State nor the DOC have expressly waived immunity. In addition, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." Accordingly, the Court is without jurisdiction to hear Duperon's state law claims against the defendants.

Therefore, the defendants' Motion to Dismiss (Rec. Doc. No. 29) should be granted in part as to the claims against them in their official capacities. Duperon's § 1983 and state law claims for which he seeks monetary damages against the defendants in their official capacities should be dismissed without prejudice for failure to state a claim for which relief can be granted by this Court and as barred in this Court by the Eleventh Amendment immunity doctrine.

## VI.     Administrative Exhaustion as to State Law Claims

In one brief sentence at the end of the first paragraph of the memorandum in support of their motion, the defendants argues that Duperon has failed to exhaust administrative remedies with respect to his state law claims and seeks dismissal of the state law claims pursuant to La. Rev. Stat. Ann. § 15:1172(C), § 15:1184(A)(2), and Fed. R. Civ. P. 56. The State provides no argument or factual support for this contention.

The Court first notes that the defendants filed their motion pursuant to Fed. R. Civ. P. 12(b)(6), not Fed. R. Civ. P. 56. A Rule 12(b)(6) motion may be considered under the standards of a Rule 56 motion for summary judgment when matters outside of the pleadings are presented in

support of the Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(c). That is not the case here. The defendants have not submitted matters outside of the pleadings. In fact, there is nothing attached to or included in the motion or memorandum which would direct the court outside of the pleadings.

Furthermore, the citation to statute and relief sought are conclusory at best. The defendants have not offered any argument or exhibits in support of the suggestion that Duperon has failed to exhaust available state administrative remedies. The defendant has not provided an affidavit or other exhibit setting forth the particular grievance procedure utilized at Rayburn or proof in the form of affidavit or otherwise that Duperon failed to pursue those remedies. Thus, even if the Court were inclined to exercise review of outside pleadings under Fed. R. Civ. P. 12(b), in the nature of a summary judgment under Fed. R. Civ. P. 56, defendants' citation to statute without proper support would not suffice. Genuine issue of fact with respect to exhaustion would and does still exist.

Furthermore, there is no basis at this time for the Court to sua sponte dismiss the claims pursuant to Title 42 U.S.C. § 1997e.[7] Exhaustion under this statute has not been raised by the defendants. The United States Fifth Circuit has held that the plaintiff must be given notice and an opportunity to establish exhaustion before a *sua sponte* dismissal is entered. *See Hines v. Texas*, 76 Fed. Appx. 564, 2003 WL 22228457 (5th Cir. Sept. 29, 2003). Plaintiff has not been provided this benefit.

---

[7] Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002).

Accordingly, the defendants' Motion to Dismiss (Rec. Doc. No. 22) must be denied in as much as it seeks dismissal of the state law claims for failure to exhaust state law administrative remedies.

## VII.     Excessive Force and Qualified Immunity

The defendants argue they are entitled to qualified immunity because the plaintiff has failed to plead sufficient facts to establish that a constitutional violation occurred or that they acted unreasonably in applying the force. In support of this argument, the defendants allege that Duperon has failed to state a claim of excessive force because he has not alleged more than a *de minimis* injury.

### A.     Standards of Review for Qualified Immunity

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides for mistaken judgment and protects "all but the plainly incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). A qualified immunity defense is analyzed under a two-step process. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130 F.3d at 99.

The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d

at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533.  In determining whether a right is clearly established, this court is confined to precedent from the Fifth Circuit and the Supreme Court.  *Shipp v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000).  Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent.  *Id*.  In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation sufficient to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law.  *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29.  Officials who act reasonably, but mistakenly, are still entitled to the defense.  Qualified immunity gives ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.  *Anderson v. Creighton*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *Hare*, 135 F.3d at 325.  The court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

     **B.**    <u>**Claims against Lieutenant Mitchell**</u>

The defendant, Lieutenant Thomas Mitchell, argues that he is entitled to qualified immunity because the plaintiff has failed to plead facts sufficient to show a constitutional violation under §

1983 or that he acted unreasonably. Duperon does not respond to Mitchell's arguments raised in either motion.

The Supreme Court has recognized that a correctional officer's use of excessive physical force against a prisoner may, in some circumstances, constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1 (1992). The analysis of whether the Eighth Amendment has been violated requires consideration of a subjective and objective component. The objective component concerns whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994)). The subjective component requires an inquiry as to whether the prison official acted with a sufficiently culpable state of mind. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

In this instance, Duperon has failed to allege any cognizable action or inaction by Mitchell which would subject him to liability under § 1983 or La. Civ. Code art. 2315, *et seq*. In the complaint in Case No. 06-3327, Duperon named Mitchell as one of the officers who allegedly beat him at the water fountain when he was being escorted to the hospital. Duperon has not asserted any particular injury resulting from any action or inaction by Mitchell himself.

As noted above, Duperon has not opposed Mitchell's original Motion to Dismiss (Rec. Doc. No. 22) nor has he mentioned Mitchell in the opposition to the second Motion to Dismiss (Rec. Doc. No. 29) or in his "7a Response." His counseled complaint fails to indicate with particularity how this violates the United States Constitution or under which provision of the Constitution, or state law, the claims are brought. Furthermore, the complaint is void of any allegation as to the actual role that Mitchell played in the circumstance about which the plaintiff complains.

The lack of allegation against Mitchell fails to establish a plausible claim for relief against Mitchell under either the subjective or the objective component of an Eighth Amendment excessive force claim. Because Duperon has failed to state a claim under the Eighth Amendment against Mitchell, the Court need not address qualified immunity.

Accordingly, the motion to dismiss Duperon's claims against Mitchell should be granted and the § 1983 and state law claims against Mitchell dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Claims against Sergeants Margiotta, Griffin, Hillman, and Smith

The defendants, Margiotta, Griffin, Hillman, and Smith also argue that they are entitled to qualified immunity from suit because the plaintiff fails to plead facts sufficient to show that he suffered more than a *de minimis* injury or that these defendants acted unreasonably in light of established law.

As outlined in detail above, to overcome a qualified immunity defense, Duperon must establish first, that a constitutional violation occurred under existing law, and second that the officers were not acting reasonably in engaging in the complained of conduct. *See Jacobs*, 228 F.3d at 388.

In connection with the first prong, Duperon seeks to recover for the use of excessive force by the officers over the course of several days. As discussed above, the Supreme Court has recognized that a correctional officer's use of excessive physical force against a prisoner may, in some circumstances, constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1 (1992). The analysis of whether the Eighth Amendment has been violated requires consideration of a subjective and objective component.

The objective component concerns whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious.  The objective component of an Eighth Amendment claim can be met by "the pain itself," even if the inmate has no "enduring injury."  *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (quoting *Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994)).

The subjective component requires an inquiry as to whether the prison official acted with a sufficiently culpable state of mind.  The United States Fifth Circuit Court of Appeals has identified several non-exclusive factors to be considered in evaluating an excessive force claim under the subjective prong of the Eighth Amendment claim: (1) the extent of the injury; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

However, not every malevolent touch by a prison guard gives rise to a federal cause of action.  *Hudson*, 503 U.S. at 9.  Thus, the degree of the injury must be more than *de minimis*.  *Id.*; *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999).  While the plaintiff need not show a significant injury, the extent of the injury may be considered in determining whether the degree of force was wanton and unnecessary.  *Id.*; *Flowers v. Phelps*, 956 F.2d 488, 491 (5th Cir. 1992).   "[T]he absence of serious injury is quite relevant to an excessive force inquiry, <u>but does not alone preclude relief</u>."  *Baldwin*, 137 F.3d at 839 (emphasis added).

Thus, "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Baldwin*, 137 F.3d at 839.  "'[W]henever prison officials stand accused of using excessive force, the core judicial inquiry is ... whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Flowers v. Phelps*, 956 F.2d 488, 491 (5th Cir. 1992).

In making this determination, the trier of fact may draw inferences from its consideration of the first three elements outlined in *Baldwin*. The Court must, however, accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). No matter how significant the injury, how far in excess of the need, and how unreasonable, if the officer's action did not constitute a wanton infliction of pain, the plaintiff's claim must fail. *Huguet v. Barnett*, 900 F.2d 838, 841 (5th Cir. 1990). The plaintiff bears the burden of proof on each and every element. *Id*.

Considering the events as outlined by the plaintiff and the defendants, Duperon has at least met the first challenge of establishing that a constitutional violation has occurred.

### 1.     **The Hot Water Episodes**

Duperon has alleged in his complaint in Case No. 06-3324, as amended the "7a Response," that defendants Griffin and Margoitta threw gallons of hot water on him on two different days during his five day ordeal. He could not recall who threw water on him on the third day. He alleges that as a result, he suffered mild burns over his entire body with the pain lasting for one to one and one-half hours after each soaking. Duperon alleges that he was locked in his cell at the time and was not violating any prison regulations when the assaults occurred.

Under the objective prong of an excessive force consideration, it is certainly alleged that the actions of the two officers caused Duperon some pain. With respect to the subjective prong, Duperon has alleged that there was no provocation or need for the application of any force nor any threat made to the officers when the water was thrown on him. He suggests that the officers acted maliciously and made no effort to temper their decisions to douse him with hot water. Oddly, these considerations are not addressed by the defendants in their motions nor do they offer any basis for the application of force, such as a perceived threat.

Instead, the defendants argue simply that Duperon's injuries were no more than *de minimis* and therefore do not meet the minimum standards for an excessive force claim. However, the well settled standard is that "the unnecessary and wanton infliction of pain" constitutes an Eighth Amendment violation. *Hudson*, 503 U.S. at 5. In this case, Duperon has alleged that the force was not applied in good faith and was instead applied while he was in his cell and not violating any prison regulations. Thus, he argues, there was no good-faith effort to maintain or restore discipline and instead was maliciously and sadistically applied to cause him harm. This initially answers *Hudson*'s "core judicial inquiry" in favor of Duperon.

The more difficult issue is whether the alleged wrongdoing in this case was "harmful enough" to establish a constitutional violation. *See Hudson*, 503 U.S. at 8. In this case, the defendants argue that Duperon's injuries from the hot water were *de minimis*. "In determining whether an injury caused by excessive force is more than *de minimis*, we look to the context in which that force was deployed." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Here, considering his allegations to be true, Duperon has alleged that the use of force was unprovoked and was of a malicious character. Where the application was calculated to produce real

16

physical harm, the extent of the physical injury is not *de minimis*. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). Thus, an injury is more than *de minimis* where the attack "was motivated entirely by malice" and the officer was not "legitimately exercising force in the performance of his duties as an officer." *Williams*, 180 F.3d at 704.

As alleged by the plaintiff, Duperon was in his cell at the time of the incident and was not engaged in a violation of prison rules. Without some provocation, or some legitimate need for the application of force, the dousing with hot water, the application of force in this context could be more than *de minimis*. *See Payne v. Parnell*, 2007 WL 2537839 (5th Cir. Sept. 5, 2007) (excessive force could be found where guard, without provocation, touched inmate with a cattle prod which caused only minor and fleeting pain, leaving a mark, and causing the plaintiff to jump and holler). The Court also notes that while Duperon did not receive medical care for these injuries, he alleges that his requests for medical were denied. A lack of medical care for the injury is not determinative of the degree of the injury in this case.

Duperon has stated a plausible claim that the force used was excessive and that, in light of the malicious application of force, his injury was more than *de minimis*, thus satisfying the first prong of the qualified immunity test. In addition, considering the allegation that the officers did not act reasonably, and instead may have acted maliciously to cause harm, resolves the second prong of the qualified immunity test in favor of Duperon.

Considering these actions, Duperon has also alleged a state law battery claim under La. Civ. Code art. 2315. The fundamental principle of tort liability in Louisiana is that every act "of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Duperon suggests that the defendants committed a battery upon him. The intentional tort of

17

battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. *Quebedeaux v. Dow Chemical Co.*, 837 So.2d 127 (La. App. 1st Cir. 2002) (citing *Caudle v. Betts,* 512 So.2d 389, 391 (La.1987)).  The plaintiff has alleged that the correctional officers committed a harmful or offensive contact by means of the hot water.

Therefore, his § 1983 and state battery claims are sufficient to survive a Rule 12(b)(6) motion.  The motion should be denied.

### 2.     **The Water Fountain Beating**

Duperon also alleges in his complaint and "7a Response," that Margiotta, Griffin, Hillman, and Smith beat him while he was taking a drink from a water fountain wearing handcuffs and shackles and not in violation of prison rules.  Specifically, he alleges that Griffin struck him in the right ear and knocked him over, with Margiotta assuring that he went down to the floor.  He further claims that Margiotta was the first officer on top of him kicking him and striking blows to his body. He also states that each of the officers kicked and punched him landing blows to his body and chest, though he could not distinguish between the blows delivered by the officers.

Considering these facts to be true, Duperon has alleged a set of facts sufficiently plausible to state a claim of excessive force.  As above, the unprovoked beating done without need to restore discipline renders his injuries more than *de minimis*.  *Williams*, 180 F.3d at 704; *Payne*, 2007 WL 2537839 at *4-5; *see also*, *Simms ex rel. Simms v. Hardesty*, 303 F. Supp.2d 656 (D. Md. 2003) (carpet burns caused by officers were more than *de minimis*); *Davis v. Lester*, 156 F. Supp.2d 588 (W.D. Va. 2001) (permanent scars to ankle more than *de minimis* injury for purposes of prison officials' defense of qualified immunity to excessive force claim).

Duperon complains of a small scratch to his ear which lasted about one day and bruises on his back and sides which lasted four to five days.  By length alone, Duperon's injuries are distinguishable from those found to be *de minimis* in other circumstances.  *See Siglar*, 112 F.4d at 193 (bruising lasting for three days was *de minimis* injury).  As mentioned above, the fact that he did not receive requested medical care can not be determinative of the degree of his injury.

Thus, the court is again left to determine the context of the beating in assessing the *de minimis* nature of Duperon's injuries.  In that regard, accepting Duperon's allegations to be true, he was unnecessarily beaten by at least four officers while handcuffed and shackled.  The beating took place while he was drinking from a water fountain, on his way to the hospital, and while he was not violating a prison rule.  Under these circumstances, Duperon has stated a plausible claim for excessive force occurring maliciously and rendering his injuries to be more than *de minimis*, thereby satisfying the first step of the qualified immunity test.

Furthermore, the alleged malicious behavior, without provocation and not in response to a need to restore discipline, begs the question that the second prong of the qualified immunity test must be resolved at this stage in favor of Duperon.

Considering these actions, Duperon has also alleged a state law battery claim under La. Civ. Code art. 2315, *et seq*., as defined above.  The motion to dismiss therefore should be denied.

**VIII.   Recommendation**

It is therefore **RECOMMENDED** that the **Motion to Dismiss or Alternatively, for a More Definite Statement (Rec. Doc. No. 22)** filed by Lieutenant Thomas Mitchell be **GRANTED** and the § 1983 and state law battery claims against Lieutenant Thomas Mitchell be **DISMISSED WITH PREJUDICE** for the plaintiff's failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 29)** filed by the defendants, Sergeant Charles Griffin, Sergeant Tommy Margiotta, Sergeant Jason Smith, Sergeant Brink Hillman, and Lieutenant Thomas Mitchell, be **GRANTED in part DISMISSING WITHOUT PREJUDICE** Duperon's § 1983 claims and state law battery claims against the defendants, Griffin, Margiotta, Smith, Hillman and Mitchell, in their official capacities, for lack of jurisdiction and/or for failure to state a claim for which relief can be granted, and **DISMISSING WITH PREJUDICE** the § 1983 and state law battery claims against Lieutenant Mitchell, in his individual capacity, for failure to state a claim for which relief can be granted; and be **DENIED in part** as to the § 1983 and state law battery claims against Griffin, Margiotta, Smith and Hillman, in their individual capacities.  These claims should be allowed to proceed further and should remain referred to the Magistrate Judge for all pretrial matters consistent with L.R. 73.2E.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____1st____ day of _____October_____, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**